IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TERRY CHARLES LANGFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:10-cv-626 |
| ) | |
| MICHAEL J. ASTRUE, in his Capacity as ) | Judge Thomas A. Wiseman, Jr. |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Before the Court is Plaintiff Terry Charles Langford's *pro se* "request" (Doc. No. 20), which the Court construes as a motion for judgment on the administrative record, seeking judicial review of the Commissioner's denial of his claim for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments under Title II and Title XVI of the Social Security Act (the "Act"). In response to the motion, the Defendant Commissioner of Social Security asserts that substantial evidence in the record supports the Agency's determination that Plaintiff is able to perform other work, other than his past work, that is available in the national economy.

The prior referral of this case to the Magistrate Judge is withdrawn and the Court finds, as explained below, that the Commissioner's decision is supported by substantial evidence in the record. Plaintiff's motion will therefore be denied, the Commissioner's underlying decision affirmed, and this matter dismissed.

**I.     BACKGROUND**

    **A.     Procedural history**

Plaintiff applied for DIB and SSI on December 29, 2006, alleging a disability onset date of December 31, 2001. (AR 70-79.)[1] The claims were denied initially (AR 32–33, 36–39) and upon reconsideration (AR 34–35, 50–53). Upon Plaintiff's request, a hearing was conducted on February 5, 2009 before Administrative Law Judge ("ALJ") James E. Craig. The ALJ issued his decision denying

---

[1] Page citations are to the Administrative Record (Doc. No. 16) filed manually per Court Order (Doc. No. 13).

Plaintiff's claims on October 21, 2009. Plaintiff's request for review by the Appeals Council was denied on April 30, 2010, rendering the ALJ's decision the final decision of the Commissioner. Plaintiff filed this action on June 25, 2010, seeking review of that decision pursuant to 42 U.S.C. § 405(g).

B. **Plaintiff's Age, Education and Work Experience**

Plaintiff alleges a disability onset date of December 31, 2001 due to severe impairments including bulging discs, degenerative disc disease, pinched nerves, cirrhosis of the liver, and jaundice. (AR 85.) He was born in July 1965 and was thirty-six on the alleged onset date, and forty-four years old at the time of the November 2009 hearing. He has at all relevant times been classified as a "younger individual" for Social Security purposes. 20 C.F.R. §§ 404.1563(c), 416.963. Plaintiff completed high school and is able to read and write in English. His past relevant work includes experience as a motion picture projectionist, which is classified as light exertional and semi-skilled work. (AR 26–27, 366.)

C. **Plaintiff's Medical History**

Lisa Kellogg, D.O., at the Crossroads Medical Group in White House, Tennessee, performed a medical evaluation of Plaintiff on December 28, 2006 at which time she noted that Plaintiff complained of recurrent back pain but no other subjective symptoms. She noted he looked extremely ill and diagnosed him with jaundice, severe pitting edema in his legs, extensive abdominal ascites, and alcohol abuse for which he needed to be hospitalized. She also noted the Plaintiff was "belligerent," likely intoxicated, wanted pain medications for his back, and declined a full medical exam. (AR 135–36.) She referred him to the emergency department at Hendersonville Medical Center.

Plaintiff presented at the ER of the Hendersonville Medical Center, and told the ER physician that he had left his Vicodin ES at home in California and needed a refill due to his chronic back pain. A "full history" was obtained from his fiancée who lived in Nashville, and records were eventually obtained from Kaiser Permanente Hospital[2] where Plaintiff had been admitted between December 11 and 15, 2006 for alcoholic hepatitis and bleeding ulcers, as well as chronic low-back pain and polysubstance abuse. The ER records indicate Plaintiff had a long history of alcohol abuse and cirrhotic liver disease but appeared "clinically stable" and was complaining only of back pain. The ER physician recommended admission to the hospital, which Plaintiff initially refused but eventually chose to comply. His total bilirubin on

---

[2] The Kaiser Permanente records, however, are not included in the Administrative Record.

admission was 8.2 (along with other abnormal labs). (AR 156.) His diagnosis on admission was liver failure with jaundice (AR 147), ascites, and peripheral edema (AR 148).

Consulting physician Dr. James Gillespie noted on December 30, 2006 that Plaintiff denied any use of alcohol since his hospital admission in California on December 11 but before that was drinking up to a fifth or more of vodka a day (and had "failed rehab at least twice" in the past). (AR 141.) Dr. Gillespie explained to Plaintiff and his fiancée that his "condition was very serious," and that, though there was "probably some liver function left," it was "impaired by probably alcoholic hepatitis," and he would "probably need to be referred to Vanderbilt for evaluation for liver transplant and rehab." (AR 142.) Ultrasound of Plaintiff's abdomen on December 30 showed hepatomegaly with diffuse fatty infiltration of the liver and ascites with a diffusely thickened gallbladder wall.

X-rays on December 28, 2006 indicated grade 1 retrolisthesis L5 on S1 but otherwise normal lumbar alignment, and mild disc-space narrowing at L5-S1 but otherwise normal lumbar vertebral height. (AR 151.)

As of January 9, 2007 Plaintiff's bilirubin had improved to 3.3 (AR 140, 184), and his leg edema was better than at the time of his admission. (AR 139.) His abdomen was still "distended with ascites but not tight." (AR 140.)

An MRI of the lumbar spine conducted on January 12, 2007 showed normal vertebral height and alignment with a disc bulge ad L4-L5 with moderate right foraminal stenosis, and a mild bulge at L5-S1 with mild right and mild left foraminal stenosis. (AR 195.)

Plaintiff saw with Lisa Kellogg, D.O. again on February 2. 2007 after his release from the hospital. He complained of low back pain "secondary to herniated discs." (AR 275.) Dr. Kellogg noted "spine normal, no tenderness, no scoliosis. . . . SI [sacroiliac] joints non tender. SLR [straight leg raising] normal. Range of motion FROM [full range of motion]. Vertebral point tenderness none." (AR 276.) She continued Plaintiff on Lortab. He followed up with Dr. J. Jefferson Jenkins in the same practice on February 18, 2007 with complaints of nausea and abdominal pain as well as low back pain with radiation. He denied tingling or numbness at that time. Dr. Jenkins noted that Plaintiff had "liver cirrhosis" with "near complete resolution" but he was "[u]nsure about condition of pancreas." (AR 272.) He also noted Plaintiff reported drinking in the past to "kill pain." (AR 272.) He was taking Lortab for back pain, had gotten

acupuncture in the past, and was being referred to pain management.  Dr. Jenkins noted normal range of motion in the neck (AR 272), and "spine normal" with "no tenderness, no scoliosis."  SLR and range of motion were normal.  There was no vertebral point tenderness.  His pulses were at 2+ bilaterally but otherwise he had normal motor strength bilaterally, normal coordination, and normal gait.  Dr. Jenkins kept Plaintiff on medication and supplements for cirrhosis and edema of the legs, noted that the jaundice was resolved, and that Plaintiff would be started on Norco for back pain and referred for pain management.  (AR 273.)  He was strongly advised not to drink.  (AR 274.)

A note in the record dated February 8, 2007 indicates White House S.T.A.R. Physical Therapy had attempted to contact Plaintiff to remind him of his appointment on February 9.  Plaintiff stated he "does not want to come to PT until he goes to see a pain management MD."  (AR 281.)  He was asked to call back after seeing a pain management doctor if he wanted to pursue physical therapy.

Dr. Jenkins refilled Plaintiff's medications on March 4, 2007. At that time, Plaintiff reported that he had an appointment to see a pain management physician on March 12, 2007.  He continued to complain of moderate to severe low back pain but again had full range of motion in the spine, normal straight leg raising test, and no vertebral point tenderness, as well as normal strength bilaterally, normal coordination and normal gait.  (AR 304–05.)  Dr. Jenkins continued Plaintiff on Norco but noted "No further pain management to be done.  [Patient] understands he must [follow up] with pain management."  (AR 305.)

Plaintiff complained to Dr. Kellogg on March 18, 2007 that his feet stayed swollen.  He reported that he had not yet seen a pain-management specialist yet but stated "he is going to go as soon as he gets on his disability."  (AR 346.)  He requested pain medications but was refused.  A phone note in the record dated March 20, 2007 indicates Plaintiff would not be seen again until his balance was paid and that he was not to be prescribed any narcotics.  Plaintiff also stated that he could not get in to see a pain-management specialist due to the cost and his lack of insurance.

Dr. James Lester, M.D., medical consultant, completed a Physical Residual Functional Capacity ("RFC") Assessment for Plaintiff dated March 12, 2007 based on his review of the medical records.  He noted Plaintiff's primary diagnosis was nutritional impairment relating to alcohol abuse, with other alleged impairments including a history of back pain, HCV and cirrhosis.  He found that Plaintiff was capable of lifting twenty pounds occasionally, ten pounds frequently, sitting for about six hours and standing or

walking for about six hours in an eight-hour workday, with no other limitations established. (AR 332–39.) The only medical records to which Dr. Lester referred in support of his assessment are those from Plaintiff's hospitalization in late December 2006 through early January 2007. (See AR 339.)

Medical consultant Joe G. Allison, M.D. performed a records review and completed a Physical RFC Assessment for Plaintiff on June 15, 2007. Dr. Allison noted that Plaintiff's primary diagnosis was liver disease and his secondary diagnosis degenerative disc disease. He believed Plaintiff was capable of lifting fifty pounds occasionally and twenty-five pounds frequently, could sit for about six hours and stand or walk for about six hours in an eight-hour workday, and otherwise had no functional limitations. Dr. Allison noted that back x-rays and an MRI showed no acute abnormality and only grade I retrolisthesis at L5-S1, and a disc protrusion at L4-L5 and mild bulge at L5-S1, but that he had full range of motion in his back, a negative straight leg raising test, and no vertebral point tenderness. He also observed that the liver disease, edema and ascites that were acute in December had basically resolved by March except for some trace edema in the legs, and that Plaintiff appeared to be engaging in drug-seeking behavior. That behavior in conjunction with the long history of polysubstance abuse detracted from his credibility regarding the degree of pain alleged. (AR 356–63.)

At the ALJ's directive, a consultative examination of Plaintiff was performed on March 26, 2009 by Dr. Bruce Davis. According to Dr. Davis's report, Plaintiff was a poor historian but alleged intermittent bilateral arm numbness and tingling and a ten-year history of degenerative spine disease and lower back pain aggravated by activity, and bilateral lower leg and foot numbness and tingling. He claimed to be unable to afford regular physician visits and his only current treatment was rest without medication. Plaintiff also reported a history of bleeding ulcers associated with alcohol and pain medication and liver disease. Plaintiff alleged continued poor appetite, abdominal pain, indigestion, and bowel problems, which he treated with diet and vitamins. He also claimed to have headaches, poor vision, shortness of breath and a cough, as well as chronic attention deficit disorder/hyperactivity with anxiety and depression and difficulty sleeping. On physical examination, he was found to have full range of motion in his neck and both upper extremities with good grip; alleged lower back pain but no tenderness, and normal thoracolumbar range of motion though "slow position change", normal gait with slow maneuvers, normal circulation and pulses. (AR 366.) Neurologically he was alert and oriented and, though anxious and

rambling, did not exhibit disturbed behaviors or thought patterns. Dr. Davis diagnosed degenerative disc/spine disease, stomach and liver disease associated with alcohol and pain medication, anxiety/depression and attention deficit disorder/hyperactivity, and noted that Plaintiff's conditions were "chronic" and warranted "regular medical care." (AR 367.)

Dr. Davis also completed a Medical Source Statement of Ability to Work-Related Activities (Physical). He assessed Plaintiff as able to lift and carry up to ten pounds continuously, up to twenty pounds frequently and up to fifty pounds occasionally; to sit for one hour without interruption and for about eight hours in an eight-hour work day; and to stand or walk for thirty minutes without interruption and for four hours each during an eight-hour workday. He opined that Plaintiff could reach overhead and push or pull with either extremity occasionally, and could frequently reach other than overhead, handle, finger, and feel with both hands. He could occasionally use his feet to operate foot controls; could never crawl and only occasionally engage in other postural activities; could never be around unprotected heights or around liver-damaging chemicals, and could occasionally be subjected to other environmental conditions including being around moving mechanical parts and operating a motor vehicle. He could tolerate moderate noise, such as that typically found in an office setting. He concluded Plaintiff was able to perform such activities of daily living as shopping, traveling without a companion, ambulating without assistive devices, using public transportation, climbing a few steps, preparing a simple meal and feeding himself, caring for personal hygiene, as well as sorting, handling and using paper files. (AR 368–73.)

### D. Testimony at the Hearing before the ALJ

At the hearing, Plaintiff was not represented by an attorney, although he apparently had been represented by an attorney who assisted him with his request for reconsideration of the Agency's initial determination. The attorney did not continue to participate after that point, although she was informed of the hearing (AR 56–57). At the hearing, the ALJ asked Plaintiff if he had received and understood the letters sent to him giving notice of the hearing and "other letters indicating that if [he] wish[ed] to be represented," he should have an attorney present with him at the hearing. Plaintiff responded that he had received and understood the letters. (AR 19.) The ALJ asked him if he wanted to waive his right to representation and continue with his hearing that day, and Plaintiff responded affirmatively. (*Id.*)

When asked about his medical history, Plaintiff testified that he had been treated prior to 2006, but was very vague about when, where and for what conditions. He testified that he was hospitalized in December 2006, at which time he was told he had "a year to live." (AR 21.) He quit drinking alcohol at that point and has not had any relapses since then: "No relapses, no, I can't drink any more. I can't even take an Aspirin." (AR 22.)

Plaintiff testified that, since that date, he had obtained antibiotics from a clinic in downtown Nashville because he was losing his teeth and his face would swell up. He had also gone into the hospital for what turned out to be a gallstone. (AR 22.) Asked about the physical problems that allegedly prevented him from working, Plaintiff testified that he had poor circulation that made his arms and legs go numb and hurt "really bad," as a result of which he is unable to drive. (AR 23.) His feet swell to the point that he cannot put on his shoes, but only if he walks a little too much, which he tries not to do. He also claimed that he has severe pain in his liver that "cripples" him (AR 24); back pain from arthritis of the spine; and a pinched nerve that used to cause tingling in his fingers. The ALJ stated that because there were no recent medical evaluations in the record, he would need to send Plaintiff for an evaluation and some tests before he could make a decision in Plaintiff's case.

Before adjourning, the ALJ also took testimony from Vocational Expert ("VE") Gail Ditmore. Ms. Ditmore questioned Plaintiff about his prior work as a film projectionist and then opined that the job as performed by Plaintiff was skilled work at the light level with an SVP of six, with no transferable skills. (AR 28.) The ALJ asked the VE to consider whether a person with Plaintiff's vocational and educational profile, who was limited to sedentary and light work and unable to perform detailed or complex work, among other limitations, would be able to perform Plaintiff's past work as he had performed it or as it is customarily performed. The VE responded that such a person would not be able to work as a projectionist because it was "very complex work." (AR 28.) The VE did find, however, that a person with Plaintiff's vocational and educational profile, who was limited to unskilled sedentary work with no exposure to moving mechanical parts, electrical shock, or high places, and no detailed or complex work, could work as a sedentary cashier, sedentary packer, or sedentary inspector, and that such jobs existed in significant numbers in the national and regional economies. (AR 28.) She confirmed that her testimony was consistent with the *Dictionary of Occupational Titles*.

**II.    THE ALJ'S DECISION**

In his decision dated November 3, 2009 the ALJ made the following specific findings:

1.    The claimant [met] the insured status requirements of the Social Security Act through December 31, 2006.

2.    The claimant has not engaged in substantial gainful activity since December 31, 2001, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: liver disease, degenerative disc disease and obesity (20 CFR 404.1520(c) and 416.920(c)).

. . . .

4.    The claimant does not have an impairment or combination of impairments that meets or medical equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . . .

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). However, he should avoid complex work.

. . . .

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . . .

7.    The claimant was born on July 17, 1965 and was 36 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

. . . .

11.    The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2001 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 11–16.)

## III. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

This Court must affirm the Commissioner's conclusions absent a determination that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994). Even if this Court were inclined to reach a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). Accordingly, a district court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### B. The Social Security Act and Disability

The central issue on appeal is whether substantial evidence supports the ALJ's determination that Plaintiff was not disabled during the relevant time period. To be entitled to DIB, a claimant must be insured for disability at the time she becomes "disabled" within the meaning of Title II of the Social Security Act. 42 U.S.C. § 423. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . .

*Id.* § 423(d)(2)(A).

In making a determination as to disability under the above definition, for purposes of DIB and SSI, an ALJ is required to follow a five-step sequential evaluation set out in the Social Security Administration's regulations. 20 C.F.R. § 404.1520. In *Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997), the Sixth Circuit summarized the five-step analysis as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Id.* at 529 (citing 20 C.F.R. § 404.1520). The claimant has the burden of proving the first four steps. *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 147–48 (6th Cir. 1990). At step five, however, the burden of proof shifts to the Commissioner. *Id.* at 148.

## IV. LEGAL ANALYSIS

In his motion, Plaintiff requests that counsel be appointed and that the matter be remanded for another hearing at which he would be represented. In addition, Plaintiff makes other arguments which the Court construes as attacking the Commissioner's decision on the grounds that it was not supported by substantial evidence in the record. Specifically, Plaintiff claims that there is "new evidence" in the record, including a test done by Dr. Cushman at the Mathew Walker Medical Center on June 22, 2010 that shows he does not have liver disease. Plaintiff contests this evidence, which is not actually in the record, on the basis that it is inconsistent with many other tests in the record. He also objects to the ALJ's failure to reference findings of numbness, foot pain, and arthritis of the spine among his "severe impairments." He objects to an "Explanation of Determination" that predates the ALJ's opinion because it does not mention nerve damage and the pain in his feet. He objects to a statement in the same report finding that he is still capable of performing the job of projectionist as it is typically performed even if not as he previously performed it. Finally, Plaintiff asserts that he is "working full time but not making any money," and that he is doing "a lot better these days" due to "new medication" but "not good enough to have a normal job." (Doc. No. 20, at 1.) The Court will address each of Plaintiff's contentions.

### A. Plaintiff Received a Full and Fair Hearing Despite Waiving His Right to an Attorney.

The record is clear that, prior to the ALJ hearing, Plaintiff received a notice from the Agency

informing him of his rights on appeal, including his right to free legal assistance with his claim; the notice directed him to contact the local Social Security Office to provide him with a list of groups that perform such work. (AR 36–39.) At the hearing, Plaintiff confirmed that he had received and understood such notices and, in fact, had hired an attorney, Carol Downton, on March 22, 2007 (AR 43–45). Ms. Downton assisted Plaintiff with his request to reconsider the Agency's initial determination (AR 34–35, 41, 51, 53) but did not participate in the appeal after that point. Downton was informed of the hearing but did not appear. Plaintiff stated at in his motion that his attorney declined to assist with his case because "she had better things to do like get married" and because she said that Plaintiff "didn't have enough doctor's notes." (*See* Doc. No. 20, at 1.) At the hearing, the ALJ asked Plaintiff if he wished to proceed with the hearing thereby waiving his right to have representation at the hearing. Plaintiff responded, "Yes, sir, yes, sir." (AR 19.) There is no evidence in the record suggesting Plaintiff has cognitive impairments, and the Court finds that he waived his right to counsel voluntarily.

Moreover, the fact that Plaintiff was not represented by counsel is not, in and of itself, grounds for reversal. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986). Rather, the operative question is whether the ALJ complied with his "special duty" to develop a full and fair record, which arises "when an unrepresented claimant unfamiliar with hearing procedures appeals before him." *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). In the present case, the ALJ questioned Plaintiff about his symptoms and his medical treatment, and sent Plaintiff for a consultative examination to further develop the factual record. The Court finds that the record in this case was not adversely affected by Plaintiff's lack of representation, and that Plaintiff's failure to have an attorney represent him at the hearing did not result in unfair or unsupported conclusions. Because Plaintiff had a full and fair hearing, his request for remand on the basis that he lacked representation will be denied.

**B.     The ALJ's Decision Is Supported by Substantial Evidence in the Record.**

At step one of the sequential evaluation, the ALJ fully credited Plaintiff's claim that he had not engaged in substantial gainful activity since December 31, 2001, his alleged onset date. As Defendant points out, this finding was in Plaintiff's favor, and Plaintiff does not challenge it, though he states in his present motion that he is currently working full time.

At step two, the ALJ found that Plaintiff had a "severe" combination of impairments, including liver disease, degenerative disc disease, and obesity. (AR 11.) This finding was also in Plaintiff's favor, though Plaintiff argues that the ALJ erred in failing also to include his complaints of numbness, extreme foot pain, and arthritis of the spine among his severe impairments. Even if the Court assumes that the ALJ should have included those complaints among Plaintiff's severe impairments, his failure to do so does not amount to reversible error. If a claimant makes a threshold showing that his impairment or combination of impairments is more than *de minimis*, that is, that it "significantly limits [his] physical or mental ability to do basic work activities," 20 C.F.R. §§404.1520(c), 416.920(c), the evaluation proceeds to the next step in the process, which affords the claimant the opportunity to prove either that his impairments are medically so severe as to conclusively require a finding that he is disabled, 20 C.F.R. §§ 404.1520(d), 416.920(d), or that he is precluded by them from working. 20 C.F.R. §§ 404.1520(f) & (g), 416.920(f) & (g). The Sixth Circuit has repeatedly held that an ALJ's failure to consider whether a specific impairment is "severe" is not reversible error if the ALJ found the claimant to suffer from a severe impairment and went on to the remaining steps in the disability evaluation, and, in that process, has the opportunity to consider the other allegedly severe impairment(s) in determining whether the claimant retains sufficient residual functional capacity to allow him to perform substantial gainful activity. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244, 244 (6th Cir. 1987). In *Maziarz*, the claimant alleged that the ALJ had erred in failing to list his cervical condition as a "severe impairment." The court rejected that contention, stating:

> According to the regulations, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation as outlined above. In the instant case, the Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.

*Id.*

In the present case, the ALJ found that Plaintiff suffered from severe impairments and went on to consider whether those impairments were disabling for purposes of the Act. In the course of that analysis, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be

accepted as consistent with the objective medical evidence and other evidence." (AR 13.) Further, in discussing the available evidence, the ALJ noted that Plaintiff complained of "extreme pain in his liver," "arthritis of the spine," "difficulty with circulation in his arms and legs" and inability to "cross his legs or use his arms due to pain and numbness. His feet and legs swell if he walks too much, and he cannot get his feet in his shoes." (AR 13.) The ALJ clearly took all of Plaintiff's subjective complaints into account in assessing his residual functional capacity. Such consideration is sufficient under Sixth Circuit precedent. *Maziarz*, 837 F.2d at 244. Moreover, while the medical evidence indicates that Plaintiff had some degenerative disc disease, it does not provide support for a diagnosis of spinal arthritis. Further, as Defendant points out, the record is also replete with evidence that Plaintiff had few, if any, musculoskeletal functional limitations despite his alleged complaints of numbness, tingling, and pain in his extremities.

At step three of the sequential analysis, the ALJ found that none of Plaintiff's individual impairments or a combination thereof met or medically equaled any Listing set forth in the Commissioner's regulatory Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. A disability claimant bears the burden of demonstrating that his impairments are included within or are medically equivalent to those set forth as presumptively disabling. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). Plaintiff did not meet that burden here, because the available evidence in this case would not have permitted a conclusion that Plaintiff met or equaled any Listing. This ALJ's conclusion that no Listing was met is supported by substantial, even ample, evidence in the record, as is exhaustively discussed in Defendant's response in opposition to Plaintiff's motion.

At step four, the ALJ found that Plaintiff was not capable of performing his past work, either as he performed it or as it is typically performed. This finding too was in Plaintiff's favor.[3]

At step five, the ALJ concluded that there was other work in the national and regional economy that Plaintiff was capable of performing. This conclusion is supported by substantial evidence in the record. The ALJ reasonably concluded that Plaintiff's subjective complaints of disabling pain were not fully credible, and that he was capable of performing a full range of sedentary work at the unskilled level.

---

[3] The Explanation of Determination to which Plaintiff objects is not material because it was an initial administrative decision by which the ALJ was not bound and which had no bearing on the ultimate decision in his case. The ALJ, in fact, specifically found that Plaintiff was not capable of performing his past work.

The ALJ took testimony from an impartial vocational expert who testified that there were jobs in the national and regional economy that would accommodate a person with Plaintiff's specific vocational limitations as identified by the ALJ. In short, the available evidence overwhelmingly supports the ALJ's conclusion that Plaintiff was not disabled, for purposes of the Social Security Act, at the time of the hearing.

**V.    CONCLUSION**

For the reasons set forth herein, the Court finds that the Commissioner's decision that Plaintiff was not suffering from a disability from December 31, 2001 through the date of the decision is supported by substantial evidence in the record. The Court finds that Plaintiff voluntarily waived his right to representation by counsel at the hearing before the ALJ, and that the ALJ complied with his duty to develop a full and fair record. Plaintiff's motion will therefore be denied and the Commissioner's decision affirmed.

An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge